**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 16 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-17244 |
| Plaintiff-Appellee, | D.C. Nos. 2:19-cv-00597-GEB |
| v. | 2:14-cr-00169-GEB- DB-3 |
| HARJIT JOHAL, | |
| Defendant-Appellant. | MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted March 1, 2021
San Francisco, California

Before: WARDLAW and BERZON, Circuit Judges, and CHEN,[**] District Judge.

Harjit Johal, a legal permanent resident, appeals the district court's denial of

her 28 U.S.C. § 2255 motion to vacate her conviction. We granted a certificate of

appealability with respect to the following issue: whether defense counsel rendered

ineffective assistance by failing to accurately advise Johal about adverse

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Edward M. Chen, United States District Judge for the Northern District of California, sitting by designation.

immigration consequences. For the reasons that follow, we vacate the conviction and remand to the district court.

To vacate her conviction on the basis of ineffective assistance of counsel, Johal must show (1) that defense counsel's representation "fell below an objective standard of reasonableness" and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A 'reasonable probability' is a standard of proof . . . 'somewhat lower' than a preponderance of the evidence." *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) (quoting *Strickland*, 466 U.S. at 694)). "[T]he performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact," *Strickland*, 466 U.S. at 698, and so are reviewed *de novo*, *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986) (citing *Strickland*, 466 U.S. at 698).

1. On the current record, defense counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. On more than one occasion, defense counsel informed Johal that "should a jury find her guilty . . . she would be deportable," when in fact she could have avoided removal despite being convicted by obtaining a sentence of imprisonment of less than one year.

Johal was charged with making a false declaration to a federal grand jury, in

violation of 18 U.S.C. § 1623. While "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii), "[t]he term 'aggravated felony' means . . . an offense relating to . . . perjury . . . *for which the term of imprisonment is at least one year*." *Id*. at § 1101(a)(43)(S) (emphasis added).

Section 1623 carries a potential sentence of imprisonment of up to five years. But the statutory definition of "term of imprisonment" for purposes of an aggravated felony is deemed to include "the period of incarceration . . . ordered by a court of law." 8 U.S.C. § 1101(a)(48)(B). So the relevant metric is the term to which a defendant is actually sentenced, not the maximum sentence. *See, e.g.*, *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1089 (9th Cir. 2008) (explaining that "because [petitioner] was actually sentenced to a term of imprisonment of at least one year, the requirements of § 1101(a)(43)(S) have been met").

The government argues that defense counsel's advice was accurate (and therefore not deficient) because the Guidelines sentence for Johal's offense was more than one year. But judges are not bound to impose Guidelines sentences. *United States v. Booker*, 543 U.S. 220, 264 (2005). And, for the reasons given below, it is likely that Johal's actual sentence would have fallen below the Guidelines range had she pled guilty to the charged offense.

"[W]hen, the deportation consequence is truly clear, as it was here, the duty

3

to give correct advice is equally clear.*" Padilla v. Kentucky*, 559 U.S. 356, 357 (2010). As Johal's lawyer was indisputably wrong in telling her that she would necessarily be deportable if convicted of any felony, or of the felony with which she was charged, he provided ineffective assistance of counsel.[1]

2. There is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[2]

Johal declares that "[i]f [she] had properly understood the immigration consequences of the charges against [her], [she] would not have taken [her] case to trial." If Johal had instead pled guilty, she would have likely faced a Guidelines sentence of 15 to 21 months' imprisonment (given the three-level reduction in offense level for acceptance of responsibility, *see* U.S.S.G. § 3E1.1 & cmt.3), rather than 24 to 30 months, making an ultimate sentence of less than 12 months

---

[1] To the extent that, as the government argues, a conviction for 18 U.S.C. § 1623 would not necessarily fall within the definition of perjury, defense counsel's advice was all the worse, as counsel informed Johal that she was charged with a deportable offense, although she may not have been.

[2] Although the parties interpret this standard to mean that Johal must show a "reasonable probability" of receiving a sentence of less than one year, the Supreme Court has suggested that Johal could succeed by demonstrating only a "reasonable probability" of receiving a lesser sentence than she did. *See Lee v. United States*, 137 S. Ct. 1958, 1968-69 (2017) (defendant who pled guilty based on erroneous advice of counsel was prejudiced even though he had "no viable defense"); *Lafler v. Cooper*, 566 U.S. 156, 161, 164 (2012). Because Johal can satisfy the parties' stricter interpretation, we need not address this distinction.

much more likely. Further, Johal declares that, had she received accurate advice from her attorney, she "would have sought a plea agreement for less than one year, offered to cooperate with the government's investigation, and pled guilty to secure the lowest possible sentence."

The government argues that no plea offer was actually made and that, if an offer had been available, there is no evidence that the government would have supported a sentence of less than one year. But some plea offer quite probably would have been available. Emails between the government and defense counsel show that the government was "happy to send [a plea] offer" to Johal. Johal's counsel, however, indicated interest only in a no-conviction deferred prosecution agreement, consistent with the erroneous advice he gave that *any* felony conviction would result in removal. It was that proposal the government was unwilling to entertain, not a proposal for a conviction coupled with a below-Guidelines sentence—which, in practical effect, would have been only one month shorter than a bottom-of-the Guidelines sentence.

Further, Johal's similarly-situated co-defendant, Hamira Chechi, received a plea deal and ultimately obtained a sentence of home detention and probation, with no imprisonment at all. Chechi was charged with the same offense as Johal, in the same indictment, and, like Johal, had no prior criminal history. Thus, Chechi's plea deal at a minimum "indicat[es] a willingness by the government to permit

5

defendants charged with the same . . . crime to plead guilty to a non-removable offense." *Rodriguez-Vega*, 797 F.3d at 788.

The government contends that Chechi is not similarly situated to Johal in the sense envisioned by *Rodriguez-Vega* because Johal insisted on her innocence and went to trial, while Chechi pled early and cooperated with the government's investigation. But the relevant inquiry is whether there is a "reasonable probability that . . . the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, had Johal—after being *correctly* advised as to immigration considerations—adopted a different defense strategy from the beginning of her criminal case. She would then have sought to reduce her sentence by pleading guilty rather than seeking to avoid a conviction by going to trial. That Johal did not pursue a plea agreement strategy because she was ineffectively advised supports— rather than defeats—any claim of prejudice.

We need not forecast the precise terms of any plea deal Johal would have received, nor need Johal establish a reasonable probability that she would have been offered a plea agreement as lenient as Chechi's. For Johal to avoid removal, any sentence of less than one year of imprisonment would do. Moreover, because "[f]ederal sentencing law permits federal prison authorities to award prisoners credit against prison time as a reward for good behavior," *Barber v. Thomas*, 560 U.S. 474, 476 (2010) (citing 18 U.S.C § 3624(b)(1)), a bottom-of-the-Guidelines

sentence of 15 months' imprisonment may have resulted in Johal serving only a 13-month sentence, as the government and the district judge would have known. Given the extremely lenient sentence accorded to Chechi and the small variance Johal would have needed to attain her much more modest goal of less than 12 months' imprisonment, there is a reasonable probability that, but for defense counsel's erroneous immigration advice, Johal could have entered into a plea agreement and obtained a 364-day sentence, a sentence, in practical effect, only one month shorter than a bottom-of-the-Guidelines sentence.

Further, even without a plea deal, had Johal entered an open plea she may well still have obtained a sentence of less than one year. That the district court sentenced Johal to a bottom-of-the-Guidelines sentence when the Guidelines range was 24-30 months does not rule out the possibility that the district court would have granted a variance or departure from an alternative Guidelines range of 15-21 months, particularly in light of the substantial immigration consequences. Because Johal's lawyer did not realize the significance of the less-than-a-year sentence for removal purposes, he did not inform the judge of that significance. So the court's failure to grant a downward variance or departure on inadequate information is not indicative of how the court would have sentenced Johal had it been faced with a lower Guidelines recommendation and more complete information.

Moreover, in determining *Strickland* prejudice, we do not consider the "idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Strickland,* 466 U.S. at 695. Even where the sentencing judge avers on post-conviction review that he would not have given the desired sentence, "the test for prejudice is an objective one." *White v. Ryan*, 895 F.3d 641, 670 (9th Cir. 2018) (citing *Strickland*, 466 U.S. at 695). So it is not relevant that the district judge was both the sentencing judge and the post-conviction review judge. *See Kayer v. Ryan*, 923 F.3d 692, 719–20 (9th Cir. 2019), *vacated on other grounds sub nom. Shinn v. Kayer*, 141 S. Ct. 517 (2020) (citing *Strickland*, 466 U.S. at 695).

In sum, Johal was prejudiced by defense counsel's erroneous advice because there is "a reasonable probability," *Strickland*, 466 U.S. at 694, that, if properly advised, Johal would have pled guilty and avoided conviction for an aggravated felony.

**VACATED AND REMANDED.**